MARTHA A. BRENNER, et al., v. F. LUTH.

| 28 | 581 |
| 40 | 363 |
| 28 | 581 |
| 41 | 762 |
| 28 | 581 |
| 55 | 107 |
| 28 | 581 |
| 57 | 615 |

1. WRITTEN CONTRACT, *Parol Testimony to Contradict; Rule.* It is a general proposition, that parol testimony is inadmissible to contradict the terms of a written agreement; and while this rule does not obtain in a controversy between a party to such written instrument and a stranger thereto, yet it is in force in all controversies between the parties themselves or between the parties and their privies.

2. RULE, *Applied.* Thus where A sells to B certain properties, and B in consideration thereof executes a written obligation to pay A's debt to C, C may sue B directly upon such written obligation; and in such an action the doctrine of the inadmissibility of parol testimony to contradict a written instrument applies.

3. WRITTEN OBLIGATION; *Inadmissible Parol Testimony.* Where A, the proprietor of a certain established business, sells that business to B, and B, in consideration thereof, executes a written obligation to pay all

the debts of A in connection with that business, and B is fully aware of the fact that A in the prosecution of that business had contracted a debt to C, and thereafter C commences an action against B on such written obligation, *held*, that B cannot prove by parol testimony that A stated and represented at the time of the purchase that his debt to C was no longer a debt of the business, but taken out of it and his private obligation, or that the understanding of the parties was that B was not to pay this particular debt.

4. AMENDMENT OF PLEADINGS; *Discretion of Court.* The matter of the amendment of pleadings is largely within the discretion of the trial court, and where that court permits the filing of two amended petitions, and each of the three petitions counts directly upon a written obligation of the nature indicated in the prior paragraph of this syllabus, *held*, that the defendant has no ground of complaint because two additional parties were made defendant, or because some minor change was made in the statement of the transactions which led to the execution of such obligation.

5. ATTORNEY ; *Competent Witness.* An attorney at law practicing in a foreign state and admitted to practice in all the courts of that state, is a competent witness to testify as to its laws.

*Error from Doniphan District Court.*

ACTION by *Luth* against *Martha A. Brenner* and *Adam Brenner*, to recover $1,200, with interest at 7 per cent. per annum from April 12, 1876. Trial at the April Term, 1881, of the district court, and judgment for plaintiff. Defendants bring the case here. The opinion states the facts.

*W. W. Guthrie,* for plaintiffs in error.

*H. M. Jackson,* and *Webb & Martin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Defendant in error obtained judgment in the district court of Doniphan county against plaintiffs in error for the sum of $1,798.68, to reverse which judgment this proceeding in error is brought. The pivotal question in the case is, as to how far parol testimony is competent to limit, qualify or explain a certain written bond. In order to fully understand this question, a brief history of the case is necessary. It appears that prior to August 5, 1878, Edmund Bilemick was the ostensible proprietor of the Doniphan vine-

yards. He was also the real owner, either solely or in partnership, with Adam Brenner. Upon that day he sold his interest therein to Mrs. Martha A. Brenner, the wife of Adam Brenner, the consideration of such sale being $6,000 in money and an assumption by Mrs. Brenner of all the debts of the business. The following bond in writing was executed by Mrs. Brenner and her husband:

"Know all men by these presents, that I, Martha A. Brenner, am held and firmly bound to E. Bilemick in the sum of six thousand dollars to be paid to the said E. Bilemick, his executors, administrators or assigns, to which payment, well and truly to be made, I bind myself, my heirs and administrators, firmly by these presents.

"Sealed with my seal. MARTHA A. BRENNER. [Seal.]
ADAM BRENNER.

"Dated Aug. 5, 1878. ·

"The condition of this obligation is such, that if the above-bounden Martha A. Brenner, or her heirs, executors or administrators, will well and truly pay or cause to be paid all the bills payable, notes and accounts due and to become due and owing by said E. Bilemick, or his business connected with the Doniphan vineyards, located at Doniphan, Kansas, then this obligation is to be void; otherwise, in full force and effect. C. K. WELLS.

"Sealed and delivered in presence of
WM. HAEKLENKAEMPER, Aug. 5, 1878."

It also appears that while Bilemick was carrying on the business, and in 1876, a quantity of wines and liquors was purchased of the firm of S. Lockman & Co., of San Francisco, California, and that at the request of Bilemick and Adam Brenner, the defendant in error F. Luth advanced $1,200 in payment thereon. This money was never repaid to him, and to recover it this action was brought. Now that this was a debt against the business connected with the Doniphan vineyards, cannot be doubted; and within the rule laid down in *Anthony v. Herman*, 14 Kas. 494, Luth could maintain an action against the obligors in this bond to recover that amount. All this is conceded; but on the trial defendant offered to prove by parol testimony, that at the time of the purchase

Bilemick stated and represented that this claim of F. Luth was taken out of the business — was no longer a debt against it, but a mere private matter of defendant's; and also that it was understood between the parties that this was not to be included within the matters covered by the bond. The trial court ruled out all this testimony, holding that the bond was a contract in writing, clear and unambiguous, and whose terms could not be varied by parol testimony. And this, as we have stated before, is the pivotal question; for if the court erred in its ruling on this, the judgment was plainly erroneous, and must be reversed; and on the other hand, if its ruling was correct, then nearly all the other matters alleged as error by the plaintiffs in error become immaterial. Counsel argues that this bond is not a contract between plaintiff and defendant, but a contract between Bilemick and defendant; that the plaintiff, being no party to it, is not bound by its terms, and has no right to insist upon the conclusiveness of its stipulations; that only the parties to a written contract can insist upon and are bound by its stipulations as the sole expression of the agreement between them; that third parties have not the right to insist upon, nor are they bound by, such written stipulations. Counsel also contends that the actual consideration of any contract may be inquired into, and that in pursuance of this, if the litigation was between Bilemick and the Brenners, parol testimony would be competent to show that this Luth claim was considered outside of the business and covered by the $6,000 paid in cash. While on the other hand, counsel for plaintiff insist that whenever a party who is the beneficiary in a written contract chooses to assert rights under it, he becomes in effect a party to it, and has all the rights of such a party; and further, that while the consideration of a contract may be inquired into for some purposes, yet where the contract contains a promise to pay certain specific claims, or to do certain named things, parol testimony is incompetent to show that any one of those claims, or any one of those things, was not in fact included or intended to be included within the scope of such stipulation.

1. Written contract, parol testimony to contradict; rule.

We agree with the latter views. While it is doubtless true that a written contract is conclusive only upon the parties to it, and does not in any manner affect the rights of strangers, yet it binds privies as well as parties, and he who claims under and by virtue of a contract is, in a general way, to be considered a privy to it. Thus if a contract is assigned, the assignee, though not one of the original parties, becomes privy to it,

2. Rule, applied.

can claim all the rights offered by, and is bound by, all the limitations expressed in it. On the same principle, he who is the beneficiary in a contract, whenever he seeks to assert the rights given him by it, becomes, if not in terms a party, yet at least a privy to the contract. He can claim nothing except what is expressed in the writing; and on the other hand, is entitled to all that it purports to give him. Supposing Luth was in fact named, and the amount of his debt expressed in this bond: can it be doubted that the obligors would be bound by the terms of the bond just as fully as though Luth was a party who signed with them? And yet what is the difference between the naming of plaintiff and a description which necessarily includes him?

Again, counsel does not question the fact that this bond, like any other written instrument, is conclusive between Bilemick and the Brenners. Suppose that after the execution of the bond, Luth, instead of suing on it, had sued and recovered from Bilemick the amount of the debt, as unquestionably he might, and that Bilemick, after paying the debt, had turned around and sued the Brenners on the bond: would they not be bound by the language of the bond to the full extent of their written promise? — and could they be heard to say that though this debt was a debt of Bilemick's, connected with the business, they were under no obligations to pay it? And if this would be the necessary result of the two actions, must not the same result follow when the law recognizes the right of Luth to sue the Brenners directly upon this bond? We conclude therefore that the bond is conclusive as between the Brenners and the plaintiff as to the

extent of their liability for this debt—as much so as though he was a party named in and who signed the bond. It is as conclusive in this action as though the controverey were directly between Bilemick and the Brenners. Now if the litigation were directly between Bilemick and the Brenners, could they in the face of the language of this bond be permitted to show by parol testimony that which they offered to show in this case? It will be borne in mind that the offer was not to show that this claim of Luth's was in fact no claim against the business, but simply to show that Bilemick stated and represented that it was no longer such a claim, and that it was understood between the parties not to be included within the obligations of the bond. It must also be stated that Adam Brenner was acting as agent of Mrs. Brenner in this purchase; that he had been connected with the business of the vineyards, and was fully cognizant of the fact that this debt to Luth had been contracted in the business of the vineyards. As the agent of the purchaser had full knowledge of all the facts, there seems to be no room for the claim of ignorance, fraudulent representations, or estoppel; and it seems to come down to the simple question whether parties, having promised in writing to pay a certain class of debts, can be permitted to show by parol that they were not to pay a particular one of that class. If, when Luth sues, they may show by parol that his debt was excluded, may they not do the same when the other creditors sue, and so one by one exclude all the claims and thus nullify altogether the written contract? This is not like the case of *Ball v. Benjamin*, 73 Ill. 39. In that case, upon the purchase of a planing mill, as part consideration was a written promise to pay all debts for material used in the construction of the planing mill. In an action on such promise to recover a debt contracted by the purchase of a double saw-bench, parol testimony was held competent to show whether such double saw-bench was a part and parcel of the material of the planing mill; that is, parol testimony was admissible to show the question of fact. So here, if the offer had been to

show that this debt of Luth's was in fact no debt against the wine business, parol testimony would have been competent. It is always competent to show by parol testimony whether a given matter is within the general description or a class named in a written instrument; but here the offer was not to show that this debt was not within the description and did not belong to the class, but conceding that it was within the description and did. belong to the class, that the parties did not intend to include it. This plainly contradicts the language which the parties used. It is just the same as though the Brenners in writing had promised to pay A, B and C, and then had sought to show by parol testimony that it was not intended that they pay C. Such testimony does not interpret — it contradicts; and parol testimony is inadmissible for such purpose. We think therefore the ruling of the district court upon this question was correct. See the following authorities: *Banks v. White,* 14 Nev. 373; *Delavey v. Anderson,* 54 Ga. 586; *Raum v. Kaltwasser,* 4 Mo. App. 573; 2 Whar. on Ev., §§ 920–923.

*3. Written obligation; inadmissible parol testimony.*

We think the disposition of this question determines the case. There are certain other matters suggested by counsel for plaintiffs in error, and yet in them we see no error, or at east none which, in view of the ruling heretofore given upon this pivotal question, can be considered prejudicial to the rights of the plaintiffs in error. In the matter of the amendment of pleadings, large discretion is vested in the trial court, and through all the petitions which were filed, there runs this central claim, that by reason of the bond which was given, and which was the basis of this action, the plaintiffs in error were liable to the defendant in error for the amount of this debt. It is true, Martha A. Brenner was the sole defendant in the first petition, and Bilemick and Adam Brenner were subsequently added; and yet this addition did not change the claim of liability upon this bond. We see nothing in the ruling as to these petitions which is erroneous.

*4. Amendment of pleadings; discretion of court.*

Again, we suppose that it is competent to prove the law of a foreign state by an attorney of that state duly admitted to

**5. Attorney; competent witness.**

practice in all its courts. The only matter in respect to which this testimony was offered, was the rate of interest obtaining in California. This was shown by the testimony of an attorney admitted to practice in all the courts of that state, to be. 10 per cent. Whether this was fixed by statute, established by the decision of the supreme court, or grown up as the custom and usage of that state, the testimony does not inform us; all that we have is the testimony of that attorney, that open accounts in that state draw 10 per cent. interest. *Prima facie,* that was competent and sufficient. (*Kermott v. Ayer,* 11 Mich. 181.)

These are all the matters that we deem necessary to notice, and in them appearing no error, the judgment of the district court will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting.